Nasii, C. J.,
dissentients. I concur with my brethren in the opinion denying to the prisoner a mnwe de novo.
I do not concur with them in their judgment in overruling the motion in arrest of judgment. I believe that the indictment is substantially defective.
*434 It is conceded, that by the common law it is so; but it is considered that the error is cured by the plastic effects of the Act of our Legislature, passed in 1811. By that Act it is declared, “that no bill of indictment or presentment shall be quashed, or judgment arrested, for or by reason of any informality, or refinement, where there appears to the court, sufficient, on the face of the indictment, to induce them to proceed to judgment.” Believing, as I do, that sufficient does not appear on this indictment to authorise me to proceed to judgment against the prisoner, I am constrained to say, that in my opinion, the judgment ought to be arrested.
Prom the earliest period of our criminal law as contained in our books of precedents, the charge of the death is averred to be from th & fatal wound-, or incise, as the case may be: no instance can be found, either before the Act of 1811, or since, in which this averment is omitted, or the death attributed to the blow inflicting the wound. This averment has ever been considered a substantial one, which must belaid in the indictment and proved as laid, so much so, that if in an indictment for murder by a wound or bruise inflicted, it appears in evidence that the death was caused, not by the wound, but by poison, the prisoner must be acquitted. Why is it that a phj’sician or surgeon, who is called as a witness, is never asked if tiie Mow was sufficient to produce death ? but whether the wound inflicted -was sufficient?
But I am not left without authority upon this point, and as with Lord IIkNyoN, so with me, one decided case is of more worth than many theories.
The opinion of men of high judicial station, upon the point in issue, is ever most grateful to me in -the discharge of my official duties. My brethren rely much upon the case of Moses to bear them out. I refer to the same case to sustain my position. Moses was indicted for murder, and in the indictment, the length and breadth of the wound was set out, but not its depth. The opinion is delivered by the late eminent Chief Justice of this Court. In commenting on the case in connexion with the objection, he says, page 466, “ The sub *435 stance is, that the prisoner gave the deceased a mortal blow of which he died. A stroke, a mortal wound inflicted thereby and the a/oerment of death by the wound are essential.” That this expression did not drop from him unadvisedly, at page 467, speaking of the relaxing effect of the Act of 1811, on bills of indictment, he’states, “That the wound, its mortality and its actually causing the death, are the substantial parts.'’’ This opinion proceeds from too high a source for me to disregard, because it was not necessary to the decision of the point immediately before the Court. The bench was at that time as strong as it ever had been, or has been, at any time since. The Court there use the words “ essential” and “ substantial,” in relation to the averment of the death being occasioned by the wound. If that averment be a substantial part of the indictment, -it must be so averred and so proved, because it is an essential fact to be found by the jury. This authority then sustains my position, that the omission in the bill of indictment of the material averment, that the death was occasioned by the mortal wound, is fatal to the indictment and not cured by the Act of 1811. The Act cures informalities. What is informality? It is nothing but want of form; a deviation from well established precedents or forms in matters of mere form. But the omission of the averment of which I complain, is matter of substance, so declared by the highest judicial authority known in our State, and not mere form. If the Act of 1811, is to have the effect contended for, I am persuaded it will prove the most mischievous of any ever enacted by our Legislature. The exposition it has received here, may be a sound one; I do not think so. Criminal proceedings will be stripped of all those forms, deemed by our ancestors so essential to the life, liberty and property of the citizen. A periphrastic mode of expression will be adopted in the place of those well known words, murder, feloniously, burglariously and others; for though they cannot be expressed by synonyms, they each may, by words equally plain and more comprehensible by common persons. Approved precedents are the best evidence ■of the law. -Both, Judge GastoN, in the case of Gallimore, *436 and Judge Ruffin, in that of Moses, point out forcibly the danger of abandoning precedents, and the latter, both in the case of Moses and that of Martin, say, that the words, felo-niously and murder and burglariously, are necessary in indictments for the crimes designated. To my mind, it is apparent, that by the word “ informalities” the Legislature intended to embrace those things which are strictly matters of form, and did not intend to extend the Act to matters of substance.
Neither is the objection to the indictment, a refinement in the language of the Act, for I cannot believe that what is deemed by the law a substantial averment, can in any sense amount to a refinement.
Ueing convinced that the indictment is fatally defective, I am constrained to say that sufficient does not appear upon its face to authorise me to say that judgment ought to pass against the prisoner. My opinion is, that judgment ought to be arrested.
Per Curiam. Judgment affirmed.